**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL RABBITT, KATHERINE MARIE ABUGHAZALEH, ANDRE MARTIN, BRIAN STRAW, AND CATHERINE SHARP,<br><br>Defendants | No. 25 CR 693<br>Hon. April M. Perry |

**RESPONSE TO THE COURT'S OCTOBER 9 REQUEST FOR EVIDENCE AND MEMORANDUM ADDRESSING FEDERAL RULE OF CRIMINAL PROCEDURE 42**

Proceeding on a non-adversarial basis, the Court has requested that the United States produce documents and answer questions by October 30 to aid it in "making findings of fact regarding potential sanctions or criminal contempt." ECF No. 276. For the avoidance of doubt, the United States has not agreed to provide any information. And regarding the Court's request, the United States seeks concrete notice of the factual basis for any investigation the Court may conduct (or is already conducting) pursuant to its inherent power.

In addition, the Court ordered briefing on (1) the constitutionality of the Court's appointment of "another attorney" under Federal Rule of Criminal Procedure 42(a)(2), and (2) the Court's authority to obtain evidence or proceed under Rule 42(b). ECF No. 270; *see also* 10/1 Hearing Tr. 55:10–11. The United States sets forth its position on these questions below.[1]

[1] The position of the United States with regard to the proper administration of Rule 42 is also set forth in other cases raising these and similar issues. *See, e.g.*, En Banc Opening Brief for Petitioners, *In re Donald J. Trump*, Case No. 25-5452 (D.C. Cir. filed July 22, 2026).

## I. THE UNITED STATES HAS NOT AGREED TO PROVIDE ANY INFORMATION AND READS THE OCTOBER 9 MINUTE ENTRY AS A REQUEST RATHER THAN A DIRECTIVE.

The Court states that its request is based on an "agreement" it reached with the United States at the October 1 hearing. ECF No. 276. The United States clarifies that it has not agreed to provide any information to the Court. Even though the Court repeatedly pressed government counsel for an answer to its question whether the United States would "cooperate" with judicial fact-finding, 10/1 Tr. 23:1–4, 23:18–22, 24:21–23, 25:22–24, government counsel made clear that "there's a limitation in terms of what [he could] answer" on behalf of the Department of Justice, and he conditioned his answers in terms of his limited "understanding," *id.* at 23:23–24, 25:25.

To be clear, the United States does not read the Court's October 9 minute entry as a directive creating any obligation to produce any information. Rather, the United States reads the minute entry as inviting voluntary cooperation with a judicial investigation, as it uses the terms "ask" and "request[]." ECF No. 276. If the Court intended for its October 9 minute entry to serve as a directive, the Court should enter an amended order and the United States will respond accordingly at the appropriate time, although for the reasons articulated below, the United States believes further proceedings would not be appropriate.

## II. THE COURT MUST SPECIFY THE ALLEGED MISCONDUCT WHEN ACTING PURSUANT TO ITS INHERENT POWER.

The United States is currently in the untenable position of being subject to possible sanctions for purported wrongdoing without sufficiently concrete or formal notice of the alleged misconduct prompting the Court's inquiry. Even where a court investigates under its inherent sanctions authority, *see United States v. Johnson*, 327 F.3d 554, 560–61 (7th Cir. 2003) (detailing courts' inherent authority in this respect), subjects should not be required to draw inferences from an ambiguous record about why there is an investigation in the first place. Concrete notice of

suspected wrongdoing is a meaningful limit on federal courts' inherent power to investigate litigation misconduct. *See id.* at 558 (investigation into fraud upon the Court was initiated only after the filing of "an order to show cause" detailing the alleged misconduct); *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 592 (7th Cir. 2008) (explaining that, although there was "no doubt that the court possessed inherent authority to address" an allegation that a litigant had fraudulently procured a Mexican judicial decision and used that decision to bolster his argument that a U.S. court should not have dismissed a case, "the kind of casual notice that one can infer from this record . . . is not good enough").

At the October 1 hearing, the Court stated that "the questions presented could affect not only the individual law licenses of the AUSAs who have been implicated, but also the possibility of a criminal prosecution." 10/1 Tr. 4:14–17. The Court also referenced "mistakes and inaccuracies," *id.* at 52:23–24, and "all the things that went wrong here," while raising the possibility that "someone at a high level in the Department of Justice did something wrong" and suggesting "that people at a high level in the Department of Justice were involved in things that could constitute obstruction of justice." *Id.* at 30:24–31:4. The Court also stated that its "sole focus at this point is on lack of candor, concealment of material facts, or other misconduct that occurred before me and whether that misconduct, if it exists, constituted a crime, or if not, something that should otherwise be sanctioned." *Id.* at 50:19–51:7. The Court also cited criminal statutes it acknowledged it had no power to independently prosecute. *Id.* at 51:23–52:25. At the same time, the Court appeared to agree that the proper scope of any investigation would not be "the Department of Justice as a whole." *Id.* at 28:23–29:4. These vague but serious threats do not sufficiently place the United States on notice of the concrete factual basis for the Court's investigation.

To be sure, in an exchange with government counsel, the Court asked questions about the following statement originally made in the United States' Response to former Defendants' Motion to Compel: "[T]here are no communications of any nature from, to, or with anyone outside of the U.S. Attorney's Office, other than the local FBI investigators assigned to the case, regarding any investigatory or charging decisions. To be crystal clear, this specifically includes anyone in the White House and all components and offices of Main Justice." 10/1 Tr. 43:24–44:6 (quoting ECF No. 110 at 3–4). If the truthfulness of that statement in the USAO's brief is what drives this Court's decision to investigate, the United States requests the Court so clarify. Without further clarification, the United States must attempt to "infer" the basis for the Court's investigation, and the Seventh Circuit requires more. *Manez*, 533 F.3d at 592.

Accordingly, the United States respectfully requests concrete notice of what alleged misconduct is being investigated.

## III. AT MOST, THE APPOINTMENT OF "ANOTHER ATTORNEY" UNDER RULE 42(A)(2) IS PERMISSIBLE ONLY IF THE ATTORNEY IS SUPERVISED BY THE ATTORNEY GENERAL.

Federal Rule of Criminal Procedure 42(a) provides that, if there is a *prima facie* showing of contempt, a district court "must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney." Fed. R. Crim. P. 42(a)(2); *see also, e.g., In re United States*, 398 F.3d 615, 618 (7th Cir. 2005) (setting out contempt referral standard). "If the government declines the request, the court must appoint another attorney to prosecute the contempt." Fed. R. Crim. P. 42(a)(2).

As a threshold matter, the appointment of "another attorney" under Rule 42(a) would violate Article II where, as here, the attorney is meant to prosecute an executive official. Under Article II, "[i]nvestigation and prosecution of crimes is a quintessentially executive function." *Trump v. United States*, 603 U.S. 593, 620 (2024). That is true even where—indeed, *especially*

where—alleged crimes by executive officials are at issue. The "'pall of potential prosecution'" can cause an executive official to "hesitat[e] to execute the duties of his office fearlessly and fairly." *Id.* at 613. Article II addresses that risk by assuring that an executive official's "acts and motives would be adjudged—insofar as the decision whether to conduct a criminal investigation and to prosecute is concerned—in the Executive Branch, that is, in a forum attuned to the interests and the policies of the Presidency." *Morrison v. Olson*, 487 U.S. 654, 712 (1988) (Scalia, J., dissenting). That assurance is "one of the natural advantages the Constitution gave to the Presidency, just as it gave members of Congress (and their staffs) the advantage of not being prosecutable for anything said or done in their legislative capacities." *Id.* The judicial appointment of an attorney to investigate and prosecute alleged crimes by executive officials "eliminate[s] that assurance of a sympathetic forum," *id.*, thereby threatening the "independence of the Executive Branch." *Trump*, 603 U.S. at 614.

At a minimum, even assuming that a district court may appoint "another attorney" to prosecute an executive official for criminal contempt, such an appointment is permissible only if the attorney is subject to supervision and removal by the Attorney General.[2] The appointment of an unsupervised prosecutor, or a prosecutor who is supervised by a court, would create a host of constitutional and statutory problems that the Court is obliged to avoid when possible. *See Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 466 (1989).

To start, Article II provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S. Const. Art. II, § 1, Cl. 1. "The entire 'executive Power' belongs

[2] Pursuant to 28 U.S.C. § 508 as well as the DOJ's succession memo, to the extent the Attorney General were unavailable to supervise this matter, this matter would be supervised by the Deputy Attorney General, and if he were unavailable, the Associate Attorney General, and if he were unavailable, the Solicitor General.

to the President alone." *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020). The authority to make "[i]nvestigative and prosecutorial decision[s]" lies at the very "core" of that executive power. *Trump*, 603 U.S. at 606, 620. Indeed, the authority "to decide which crimes to investigate and prosecute" is a "'conclusive and preclusive'" power, meaning that it "may not be regulated by Congress or reviewed by the courts." *Id.* at 620–21. A court invades the Executive Branch's "exclusive constitutional power" over criminal investigations and prosecutions, *id.* at 609, by appointing a prosecutor who is not subject to supervision by the Executive Branch.

Article II also provides that the President, "shall take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3. Under the Take Care Clause, "the choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch, not within the purview of private . . . attorneys." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021). "Decisions to initiate charges, or to dismiss charges once brought, 'lie at the core of the Executive's duty to see to the faithful execution of the laws.'" *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016). The Take Care Clause, too, thus requires that a court-appointed prosecutor's charging decisions be subject to supervision by the Executive Branch.

Article II additionally empowers the President, "to grant Reprieves and Pardons for Offences against the United States." U.S. Const. Art. II, § 2, Cl. 1. It is well-established that the greater power to pardon includes the lesser power to decline to bring a criminal prosecution in the first place. *See Fokker*, 818 F.3d at 741; *In re Aiken County*, 725 F.3d 255, 262–63 (D.C. Cir. 2013) (opinion of Kavanaugh, J.). It is likewise well-established that the pardon power extends to criminal contempt. *See Ex parte Grossman*, 267 U.S. 87, 108–22 (1925). Allowing a court-appointed attorney to prosecute criminal contempt without executive supervision would thus

infringe the President's "indubitable" power under the Pardon Clause to "direct that the criminal be prosecuted no further." *Aiken*, 725 F.3d at 263 (opinion of Kavanaugh, J.) (quoting speech by John Marshall).

Still more, Article II's text and structure make clear that the President generally may remove "subordinates" who "exercis[e] executive power" on his behalf. *Trump v. Slaughter*, 609 U.S. 422, 455 (2026). As a matter of statutory interpretation, Congress must use "very clear and explicit language" to "take away this power of removal." *Shurtleff v. United States*, 189 U.S. 311, 315 (1903); *see Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 770–71 (2025). And as a matter of constitutional law, a statute that purports to take away that power is, as a "general rule," invalid. *Slaughter*, 609 U.S. at 456. Congress has not even attempted to limit the President's power to remove prosecutors appointed under Rule 42(a), and given that "prosecutorial decisionmaking . . . implicates 'conclusive and preclusive' Presidential authority," *Trump*, 603 U.S. at 620–21, any such attempt would be blatantly unconstitutional.

To the contrary, Congress has expressly "give[n] the Attorney General the authority to replace" prosecutors appointed under Rule 42(a). *United States v. Donziger*, 38 F.4th 290, 300 (2d Cir. 2022) (citing 28 U.S.C. § 518(b)). Section 518(b) of Title 28 provides that whenever "the Attorney General considers it in the interests of the United States," "he may direct . . . any officer of the Department of Justice" to "argue any case in a court of the United States in which the United States is interested." 28 U.S.C. § 518(b). Section 519(a) authorizes the Attorney General to "supervise all litigation to which the United States . . . is a party." *Id.* § 519(a). Both of these statutory provisions give the Attorney General control over the conduct of a criminal contempt prosecution. *See Donziger*, 38 F.4th at 300.

Subjecting a contempt prosecutor to the supervision of a district court rather than the supervision of the Executive Branch would violate not only Article II, but also Article III. Article III vests federal courts with only "[t]he judicial Power." U.S. Const. Art. III, § 1. "The judicial power is the power to decide, in accordance with law, who should prevail in a case or controversy." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 816 (1987) (Scalia, J., concurring in the judgment). It "includes the power to serve as a neutral adjudicator in a criminal case, but does not include the power to seek out law violators in order to punish them—which would be quite incompatible with the task of neutral adjudication." *Id.*; *see Donziger v. United States*, 143 S. Ct. 868, 869 (2023) (Gorsuch, J., dissenting from denial of certiorari).

Rule 42 does not purport to override those constitutional limits. Rule 42 states that a court may "appoint another attorney to prosecute the contempt," Fed. R. Crim. P. 42(a)(2), but it says nothing about supervising, directing, or removing the attorney. Under the Rule's plain terms, the court's role is limited to making the initial appointment. Once the appointment is made, the court's authority ceases, and any further oversight of the prosecution is entrusted to the Executive Branch alone.

The Supreme Court's decision in *Young* is not to the contrary. *Young* explained that a district court's role is limited to "initiat[ing] a contempt proceeding" by "appoint[ing] an attorney." 481 U.S. at 795 n.7. After that "initial decision," any further prosecutorial decisions—such as "the determination of which persons should be targets of investigation, what methods of investigation should be used, what information will be sought as evidence, [and] which persons should be charged with what offenses"—"are all made outside the supervision of the court." *Id.* at 807; *see, e.g.*, *United States v. Providence Journal Co.*, 485 U.S. 693, 700–05 (1988) (holding that, even

where a prosecutor is appointed under *Young*, appeals are subject to supervision by the Solicitor General under 28 U.S.C. § 518(a)).

"Such a system of appointment by the Judiciary but oversight by the Executive Branch is hardly foreign to our system of constitutional governance." *United States v. Donziger*, No. 19-cr-561, 2021 WL 3141893, at *55 (S.D.N.Y. July 26, 2021). For instance, in *Morrison*, the Supreme Court upheld a statute under which an independent counsel could be appointed by a panel of judges but overseen by the Attorney General. *See* 487 U.S. at 670–77. Similarly, district courts may in some circumstances appoint interim U.S. Attorneys, but "no one would reasonably suggest that the interim U.S. Attorney would operate free from control or influence by the Attorney General." *Donziger*, 2021 WL 3141893, at *55. "Rule 42 provides no basis to suggest that the same principle does not hold true in the context of private attorneys appointed to prosecute criminal contempt charges." *Id.*

Some scholarly articles have suggested that courts at the founding had inherent authority to supervise contempt proceedings without Executive Branch involvement. *See* Aditya Bamzai & Samuel L. Bray, *Prosecuting Contempt* 47 (Univ. of Chi. L. Sch. Research Paper No. 26-13), https://perma.cc/C27Z-8C3D. As those articles recognize, courts at the founding "were not punishing crime in the ordinary sense." Bamzai & Bray at 47. But that is no longer how criminal contempt works. *See Bloom v. Illinois*, 391 U.S. 194, 195–08 (1968) (surveying history). Today, indirect contempt, "is a crime in the ordinary sense." *Id*. at 201. A criminal-contempt defendant is entitled to a jury trial, *id.* at 202, before an unbiased judge. *Offutt v. United States*, 348 U.S. 11 (1954). Judges can no longer preside over investigations or appoint opposing counsel to investigate. *Young*, 481 U.S. at 807. And the President can pardon criminal contempt. *Grossman*,

267 U.S. at 108–22. Like other criminal prosecutions, therefore, a prosecution for contempt must be supervised by the Executive Branch.

## IV. RULE 42(B) DOES NOT ALLOW FOR THIS COURT TO ASK FOR OR REVIEW EXTRINSIC EVIDENCE.

Rule 42(b) allows for "summary disposition" when "a person … commits criminal contempt" in the court's presence "if the judge saw or heard the contemptuous conduct and so certifies." Fed. R. Crim. P. 42(b). The certification "must recite the facts, be signed by the judge, and be filed with the clerk." *Id.*

These summary contempt proceedings are only appropriate "when the express requirements of Rule 42(b) are met and when there is a compelling reason for an immediate remedy or time is of the essence." *United States v. Britton*, 731 F.3d 745, 749 (7th Cir. 2013) (alterations and quotations omitted).

The Court cannot proceed via Rule 42(b) if it needs to "rely on extrinsic evidence to make a contempt finding." *United States v. Britton*, 731 F.3d 745, 749 (7th Cir. 2013). Rule 42(b) is only appropriate when "no separate fact-finding is required." *FTC v. Trudeau*, 606 F.3d 382, 390 (7th Cir. 2010); *see also, e.g., United States v. Glass*, 361 F.3d 580, 588–89 (9th Cir. 2000) (explaining why Due Process requires summary contempt proceedings be held only in cases where no "independent proof" beyond what the court saw is necessary). Since "all of the essential elements of the misconduct" under Rule 42(b) must be "under the eye of the court [and] are actually observed by the court," a court cannot do factual "research to figure out" the nature of the alleged contemptuous conduct. *Trudeau*, 606 F.3d at 386–88.

Accordingly, an attorney's failure to appear at a hearing, making "suspect statements in [a] motion," and "testimony at a show cause hearing" are not bases for Rule 42(b) summary contempt because they require "extrinsic evidence" and "fact-finding" beyond what it observed to satisfy all

the elements of contempt. *Britton*, 731 F.3d at 749. When it comes to, for example, a purported misrepresentation in a motion, "other facts outside the record bear on whether [the attorney] intentionally made false representations in his motion." *Id.* at 750. Likewise, in a situation where the Court received emails and attempted to ascertain their source, the act of actually receiving an email did not occur in the Court's presence and therefore could not give rise to Rule 42(b) proceedings—"the act itself must be committed in the judge's presence; that its effects are felt by the district judge is insufficient to justify summary disposition." *Trudeau*, 606 F.3d at 386. Accordingly, a Court may not conduct discovery, engage in fact-finding, or otherwise take evidence under a Rule 42(b) proceeding.

Moreover, Rule 42(b) is inappropriate at this point in these proceedings because, "there [is] no need for immediate punishment" since any allegedly affected proceedings are over. *Britton*, 731 F.3d at 749. Rule 42(b) proceedings are appropriate when there is "a compelling reason for immediate remedy" or "time is of the essence" to preserve the integrity of the proceedings. *United States v. Underwood*, 88 F.4th 705, 711 (7th Cir. 2023). That applies, for example, to an attorney who ignores court orders and makes impermissible arguments at a trial; Rule 42(b) can be used in that situation to put an immediate stop to the attorney's actions and avoid, "wreck[ing] a long trial involving grave charges of public correction." *United States v. Lowery*, 733 F.2d 441, 444–48 (7th Cir. 1984).

The fact that the Court here was not "forced to stop proceedings" but instead made the later decision to "actually convene proceedings" to determine whether contempt occurred means summary contempt under Rule 42(b) is inappropriate. *Trudeau*, 606 F.3d at 389; *see also Britton*, 731 F.3d at 750 (quoting *Trudeau* for the same).

## CONCLUSION

The United States clarifies that it has not agreed to cooperate with any investigation conducted by this Court and requests notice of the concrete basis for the investigation.

On Federal Rule of Criminal Procedure 42: the appointment of "another attorney" under Rule 42(a) would violate Article II where, as here, the attorney is meant to prosecute an executive official rather than a private individual; the Court may, at most, appoint "another attorney" under Rule 42(a)(2) if that attorney is supervised by the Attorney General; and the Court does not have the authority to conduct fact-finding pursuant to Rule 42(b) here because any wrongdoing would have taken place outside the Court's observation.

Dated: October 30, 2026

Respectfully submitted,

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr.
*Associate Attorney General*
Henrique Carneiro
*Counsel to the Associate Attorney General*
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for the United States of America*